IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT DARNELL ROBERTS, #342232 *
        Petitioner,
    v.                                     *     CIVIL ACTION NO. AW-11-cv-868

SOLOMON HEJIRIKA, *et al.*     *
        Respondents.
                                     ***

## **MEMORANDUM OPINION**

Pending before the court is Petitioner's original Writ of Habeas Corpus, Respondents' Answer, and Petitioner's multiple Replies. (ECF Nos. 1, 16-18, 20-22, 25, 26, 28-34, & 36-46). After review of these papers, the court has determined that no evidentiary hearing is warranted. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(e)((2). For reasons that follow the Petition will be denied and dismissed with prejudice.

## **Procedural History**

According to the record, on April 26, 2006, Petitioner was indicted in the Circuit Court of Cecil County, Maryland for the murder of Tyreak Wilcher. (ECF No. 16 at Ex. 7). The following facts were set out in the post-conviction decision issued by Circuit Court Judge Thomas G. Ross on September 4, 2009:

> Petitioner was indicted by a Cecil County grand jury on April 26, 2006 on ten (10) separate criminal counts- Murder-First Degree; Murder-Second Degree, Assault-First Degree, Assault –Second Degree; Reckless Endangerment; Attempted Murder-First-Degree; Attempted Murder-Second Degree: Assault First-Degree; Assault-Second Degree; Reckless Endangerment. All of the offenses were alleged to have occurred on April 18, 2006. The victim in the matter involving the first five (5) counts was Tyreak Vonsharron Wilcher while the victim regarding the second five (5) counts , i.e., Counts 6-10, was Elliot Jones. A warrant was ordered and issued on April 27, 2006. Petitioner was served with the warrant on April 28, 2006, and he made his initial Circuit Court appearance that day.

On April 29, 2006, the defendant forwarded the first of a multitude of *pro se* pleadings to the court. Theses first pleadings filed on May 2, 2006, were motions for discovery and for speedy trial. James Close, Esquire, Assistant Public Defender, entered an appearance on May 10, 2006, together with filing an omnibus motion. A notice thereafter issued, setting motions of September 1, 2006 and jury trial for the week of October 2, 2006. On May 26, 2006, defendant filed *pro se* motions for bail review and to dismiss. On June 7, 2006, the State's automatic discovery and request for discovery and State's answer to defendant's motion for discovery and inspection were filed. On August 1, 2006, defendant's *pro se* request for discovery copies was filed. He filed a "notice to court" on August 8, 2006, requesting "no delays," as well as additional *pro se* motions, including motions to dismiss and exclude illegal evidence, and for acquittal or dismissal, and an amendment to motion for acquittal. On August 29, 2006, defendant filed a *pro se* "freedom of information act" request and a writ of mandamus or dismiss. At a motions hearing on September 1, 2006, the motion to suppress statement(s) was denied, except that, according to the docket entries, clothing/DNA was reserved.

On September 20, 2006, petitioner, through counsel, filed a motion to dismiss based on discovery violation(s) related to the disclosure of the "dying declaration." Counsel also requested, by letter on September 27, 2006, access to 115 photos taken of the crime scene, and he filed a motion to postpone [trial]. The latter request was granted at a hearing on September 29, 2006, for good cause shown. On October 23, 2006, a notice of trial issued scheduling trial for the week of March 5, 2007.

On December 4, 2006, through counsel, petitioner filed a motion for subpoena for tangible evidence before trial that was granted, by order, filed December 11, 2006. On February 15, 2007, counsel filed on petitioner's behalf a supplemental request for discovery regarding the "dying declaration," and a responsive pleading was filed by the State on February 16, 2007. Additionally, counsel filed a copy of a letter sent to the State on February 15, 2007, seeking to assure that any documents that the State was planning to produce at trial for any reason be seen and reviewed by counsel prior thereto. He also petitioned for a writ of habeas corpus *ad testificandum* to be issued for an inmate witness. Prior to trial, counsel filed extensive *voir dire*, as well as motions *in limine* seeking to exclude testimony of witnesses regarding blood evidence and potential testimony regarding possession of the bayonet by petitioner prior to the date of the murder.

The matter proceeded with jury selection on March 5, 2007 and a jury of twelve (12) and three (3) alternates was sworn. In the interim, on March 6, 2007, apparently, the parties reached a plea agreement that involved a *binding* guilty plea. Defense counsel went over the guilty plea form with petitioner on March 6, 2007, the day before the guilty plea, which petitioner, then signed [and also initialed in two places on the form.

At a hearing on March 7, 2007, petitioner waived his right to a jury trial and entered a plea of guilty before Honorable O. Robert Lidums, and he was sentenced the same day by Judge Lidums. In exchange for his guilty plea, the State and the Court agreed to a sentence that included 15 years of *executed* imprisonment. As part of his guilty plea before the court on March 7, 2007, after being arraigned on the charge of First Degree Assault and placed under oath, petitioner answered the questions from Judge Lidums to assure that his guilty plea was made knowingly and voluntarily and with an understanding of the nature of the charges and the consequences of the guilty plea. Some of the questions that were asked and answered included:

Have you taken any medication or drugs today or have you had any alcoholic beverages to drink today? Answer: No, sir.

      *    *    *    *

Is that diagnosis [bi-polar disease] in any way affecting your ability to understand what is going on here today? Answer: No, sir.

Do you know and understand the ten charges that have been lodged against you? Answer: Yes.

All right. Mr. Close have you gone through each and every one of the ten with him? Answer: Yes, Your Honor.

And did you at any time prior to the proceedings being initiated against you receive a copy of the charges? Answer: Yes.

All right. Now, as I'm sure you're aware by now, you're entitled to a trial by a jury in this case? Answer: Yes.

As a matter of fact we've already selected a jury? Answer: Yes.

And do you understand that unless you waive the right to trial by a jury, you will automatically be tried by a jury? Answer: Yes.

Do you understand that if you wished to be tried by a jury, the jury would be made up of twelve citizens of the country who would be chosen in your presence and with your participation, as has been done, from a larger group which in turn has been chosen randomly by computer. Do you understand how the system works? Answer: Yes.

Do you further understand that if you wish to be tried by a jury, all 12 persons on the jury would have to be convinced beyond a reasonable doubt that you were guilty of the crimes charged before you can be found guilty? Answer: Yes.

Do you understand that if you are to be tried by a judge, the judge would have to be convinced beyond a reasonable doubt that you are guilty of the crimes charged before you could be found guilty? Answer: Yes.

Have you had time to consult with your attorney and to ask your attorney any questions you may have about the case and your decision to waive a jury trial in order to have a trial by a judge? Answer: Yes.

Are you satisfied with the way your attorney has represented you in this case? Answer: Yes.

Has anyone made promises, threats or other inducements to get you to waive your right to trial by a jury or to enter a plea of guilty? Answer: No.

Besides the plea negotiations of your attorney, has anyone made any promises, threats or other inducements to you – I've asked this question before- to get you to do what you're doing here today? Answer: No.

* * * *

Do you further understand that once your plea is entered and once your plea is accepted, you will not be in a position at a later time if you become dissatisfied with your sentence to attempt to withdraw your plea and proceed on to trial. Do you understand that? Answer: Yes, sir.

Okay. Is there anything about waiving your right to trial by jury that you do not fully understand? Answer: No, sir.

All right. Basically you're waiving your right to trial by jury? Answer: Yes, sir.

* * * *

In other words, there will be no trial, There will just be a statement of facts presented to me by the prosecutor and with any additions or corrections that you attorney may make or that you wish to make. That's what I will base may [sic] decision as to your guilt or innocence. Understood? Answer: Yes.

Are you doing this of your own free will? Answer: Yes.

And freely and voluntarily? Answer: Yes.

ECF No. 16, Ex. 7 at pgs. 1-6.

In his application for leave to appeal, Petitioner raised the following grounds for review:

> His guilty plea was defective because the circuit court judge did not make an inquiry into his mental health condition after Petitioner noted that he was bi-polar; and did not inform Petitioner of the maximum penalty.

*Id*., Ex. 3.

On January 29, 2008, the Court of Special Appeals of Maryland summarily denied the application. *Id*., ECF No. 4. Petitioner filed no further direct appeal applications or writs. While the application was pending, however, Petitioner filed a post-conviction petition in the circuit court. That petition was withdrawn at Petitioner's request on August 20, 2007. He re-filed a post-conviction petition on December 14, 2007. *Id*. , Ex. 5. As construed by the state court, Petitioner claimed that his defense counsel was ineffective for failing to: explain the nature of the charges, inform him of the rights he was waiving due to his entry of a plea, object to an illegal sentence, share discovery as to another individual, Cherrie Auguste, being held for a time as the murderer, object to a sentence of probation outside the plea, explain other plea options, object to non-compliance with Maryland Rule 4-242(c), investigate the charges prior to trial, advise him of his right to a jury or to object to the court's waiver,[1] object to the statement of facts supporting the plea, explain the maximum sentence, file an application for leave to appeal, and advise him of the state's burden of proof at trial. ECF No. 16, Exs. 5-7. Petitioner further claimed that the trial court was without jurisdiction to impose a split sentence without a probationary period. *Id*., Ex. 6 , Tr. at 32. In addition he also made a request under the Uniform Post-Conviction Act for DNA testing. *Id*., Ex. 6,

---

[1] This claim was abandoned during the course of the post-conviction proceeding. ECF No. 16, Ex. 6 at Tr. 26.

5

Tr. at 33-34. In a September 4, 2009 opinion, Judge Ross held that Petitioner be re-sentenced,[2] but otherwise denied post-conviction relief. ECF No. 16, Ex. 7.

On September 30, 2009, Petitioner filed a "notice of appeal of post-conviction" which claimed that the post-conviction court did not review his illegal sentence claim, had improperly determined that his plea was knowingly and voluntarily entered, and the court had failed to address his actual innocence claim. *Id*., Ex. 8. Petitioner also filed an application for leave to appeal the Circuit Court's decision to deny his motion to reopen post-conviction proceedings. *Id*., Exs. 9 & 10. On December 27, 2010, the Court of Special Appeals of Maryland denied both appeals. *Id*., Ex. 9. On October 15, 2009, Petitioner was re-sentenced to serve 15 years in the Division of Correction.

On April 1, 2011, the court received for filing this § 2254 Petition. Petitioner claimed actual and factual innocence based upon the dying declaration of the victim who identified "Theodore Syria" as his assailant to an ambulance driver. He contended that the prosecutor committed misconduct in withholding the statements of a Cherrie Auguste, who was originally arrested for the murder, failed to pursue issues surrounding the victim's dying declaration, and failed to investigate Syria. He additionally claimed that plea counsel was ineffective for the failure to investigate Syria. ECF No. 1.

Petitioner was permitted to file multiple amendments to his original petition. First, he contended that his defense attorney James Close was ineffective for failing to investigate Theodore Syria and Cherrie Auguste and he did not investigate a "blood-soaked" vehicle that had driven off

---

[2] Judge Ross decided that the sentencing court erred by imposing a split sentence of 25 years with ten years suspended without also ordering probation. ECF No. 16, Ex. 7 at pgs. 15-16, & 24. In addition, he simultaneously denied Petitioner's request for DNA testing and habeas corpus relief based upon his claim of actual innocence.

from the scene of the attack on Wilcher. ECF No. 3. Further, he alleged that post-conviction counsel was ineffective for failing to raise proper issues. In addition, he cites to prosecutorial abuse for the failure to acknowledge charges filed against Cherri Auguste and in failing to respond to his Freedom of Information Act request. *Id*. He further claimed that he is actually and factually innocent of the crimes given the dying declaration of victim Wilcher. ECF No. 6. In other amendments, Petitioner takes issue with the plea agreement, the judge's sentence, counsel's failure to raise an illegal sentence claim during the plea, and the prosecutor's repudiation of the plea agreement.[3] ECF Nos. 7 & 15.

## Threshold Considerations

### Timeliness & Exhaustion of State Remedies

Respondents do not contend, and the court does not find, that the Petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). Further, Petitioner no longer has any state direct review or collateral review remedies available to him with respect to the claims raised in this court. His claims are exhausted for the purpose of federal habeas corpus review.

### Procedural Default

Before Petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U. S. 509, 521 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728 (1999); 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by

---

[3] Petitioner has also filed a Writ of Mandamus, Requests for Free Copies of Post-Conviction Transcripts and Decision, for Judicial Intervention, and for Appointment of Counsel. ECF Nos. 8-11 13, 24, 25.

raising certain claims on direct appeal and with other claims by way of post-conviction proceedings. Exhaustion is not required if at the time a federal habeas corpus petition is filed the Petitioner has no available state remedy. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

Where a Petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977). Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U. S.298, 314 (1995); *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009). The miscarriage of justice standard is directly linked to innocence. *Schlup*, 513 U.S. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496.

Respondents contend that Petitioner's prosecutorial misconduct claim is procedurally defaulted because it was not raised in state court. In his replies, Petitioner seemingly argues that his prosecutorial abuse claim is not defaulted because: (1) he is innocent of the charges; (2) he raised the claim in one of his many post-conviction petitions; and (3) a new Supreme Court ruling in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), does not bar him from establishing cause for procedural default. (ECF Nos. 18, 21, 23-26, 28, 31, 34, 36-37, & 47). He continues to argue that he received ineffective assistance of plea counsel and he is factually innocent of the charges. (ECF No. 17-18, 20-25, 30, & 36).

This prosecutorial misconduct claim was not raised on direct appeal and, if raised on post-conviction, review was seemingly abandoned at the post-conviction hearing, where Petitioner clearly only articulated grounds of ineffective assistance of plea counsel. ECF No. 16, Ex. 6. He has offered no justiciable reasons for review of this claim, and the court finds the claim defaulted.

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). This standard is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. ___, ___, 131 S.Ct. 1388, 1398 (2011); *Harrington v. Richter*, 562 U.S___, ___ 131 S. Ct. 770, 786 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the

9

evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, ___U.S. ___, 130 S.Ct. 841, 849 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. **"**[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.*"* *Renico v. Lett,* ___ U.S___, 130 S. Ct. 1855, 1862 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be

10

particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379. With these standards in mind, the court shall consider Petitioner's claims.[4]

Respondents challenge Petitioner's non-defaulted claims of actual innocence, ineffectiveness of plea counsel, and ineffectiveness of post-conviction counsel claims, arguing that: the actual innocence claim is not supported by the record; the post-conviction court's decision as to Petitioner's ineffective assistance of plea counsel grounds is entitled to due deference; and his ineffective assistance of post-conviction counsel claim is not subject to federal habeas corpus review. (ECF No. 16, Memorandum at 14-20).

## Analysis

### Ineffective Assistance of Plea Counsel

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id*. at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of

---

[4] This standard of review limits the court's review of the state court determinations. For that reason, the court may not consider any "newly discovered evidence" presented by Petitioner, such as

11

reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted). A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable. *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fret well*, 506 U.S. 364, 372 (1993).

Where defendant enters a guilty plea upon counsel's advice, the "voluntariness of the plea depends on whether advice was within range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The two-part *Strickland* test for effective assistance of counsel applies to challenges to guilty pleas based on ineffective assistance of counsel. *Id*. at 58. In effect, a defendant must show that but for the ineffective advice, he would not have pleaded guilty and would have insisted on going to trial. *See Lafler v.Cooper*, 132 S. Ct. 1376, 1384-85 (2012).

---

the arrest of Petitioner's other alleged victim, Elliot Jones. (*See* ECF No. 29).

Petitioner claims that plea counsel committed a number of errors. The state post-conviction court reviewed the plea and post-conviction hearing transcripts, Petitioner's extensive pro se filings, and the record, which included testimony from defense counsel Close, and rejected these claims. ECF No. 16, Ex. 7 at pgs. 12-21. Judge Ross's decision survives scrutiny under § 2254(d) & (e). Petitioner has failed to show that defense counsel's actions were deficient and he was prejudiced by those alleged failures. The post-conviction court correctly concluded that Petitioner's plea was voluntarily and knowingly given and that the sentencing court and counsel went above and beyond to ensure that Petitioner understood the parameters of the plea. The court finds no reason to disturb his determinations. Judge Ross's rulings as to these grounds involved a reasonable application of *Strickland*.

## Actual Innocence

Petitioner argues that he is innocent of the charges. Judge Ross examined the claim as raised in one of Petitioner's many self-represented petitions and found that he was not entitled to relief. ECF No. 16, Ex. 7 at p. 22. The court concurs. As already noted, this ground may not stand as a free-standing, independent foundation for habeas corpus relief, but is rather a gateway consideration for consideration of an otherwise defaulted claim. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993). At the close of the *Herrera* opinion, the Supreme Court reasoned, *arguendo,* that the execution of a truly innocent person would violate the Constitution, but opined that the threshold showing for such a case "would necessarily be extraordinarily high." *Herrera v. Collins*, 506 U.S. at 417. Finding that the petitioner did not meet this abstract standard, the *Herrera* Court denied his actual innocence claim.

Whatever burden a hypothetical freestanding innocence claim would require, this Petitioner has not satisfied it. As correctly noted by Respondents, Petitioner's ground is not based on actual

proof of innocence, but rather on alleged flaws in the State's case. The record shows that during the course of the plea hearing, he admitted to assaulting Tyreak Wilcher with a knife with the intent to cause serious physical injury and serious injury did ensue. Further, during the course of the post-conviction hearing, plea counsel noted that Petitioner had indicated to him at the plea hearing that a fifteen year sentence "was not bad for a body," an apparent reference to Petitioner's providence in dodging a murder conviction for his actions. *Id*. Ex 6, Tr. at p. 54.

Petitioner's claim of actual innocence is a canard and shall be denied.

### Effectiveness of Post-Conviction Counsel

Petitioner claims that post-conviction counsel was ineffective for the failure to advance his post-conviction grounds and to argue certain issues. Errors or defects in state post-conviction proceedings do not raise constitutional questions cognizable in federal habeas corpus proceedings. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988); *see also Williams-Bey v. Trickey,* 894 F.2d 314, 317 (8th Cir. 1990); *Kenley v. Bowersox*, 228 F.3d 934, 938-39 (8th Cir. 2000); *Zamora v. Pierson*, 158 F.Supp.2d 830, 836 (N.D. Ill. 2001). "There is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson,* 501 U.S. 722, 752 (1991) There is generally no right to effective assistance of post-conviction counsel. "Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id.* Moreover, § 2254(i) plainly states, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.

In *Martinez v. Ryan,* ___ U.S. ___, 132 S.Ct. 1309 (2012), the United States Supreme Court recognized that its previous ruling in *Coleman* "left open" the question of whether a prisoner has a right to effective counsel in so-called "initial-review collateral proceedings"- proceedings "which

14

provide the first occasion to raise a claim of ineffective assistance of counsel." *Id.* at 1315. The *Martinez* Court recognized a "narrow exception" to "the constitutional rule that there is no right to counsel in collateral proceedings," holding that inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel. *Id.* The Court reasoned that "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claims" and such collateral proceedings are "in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance [of counsel] claim." *Id.* at 1316–17. However, the *Martinez* Court made clear that its holding did not overturn *Coleman,* nor did it expand the availability of relief for ineffective assistance of counsel in post-conviction proceedings beyond initial-review collateral proceedings. *See id.* at 1319–20 (explaining that *"Coleman* held that an attorney's negligence in a post-conviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial" and noting that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here"). The Court went on to state explicitly that its "holding ... [did] not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, *second or successive collateral proceedings,* and petitions for discretionary review in a State's appellate courts." *Id.* (citing *Coleman,* 501 U.S. at 754, and *Murray v. Carrier,* 477 U.S. 478, 488 (1986)).

## Conclusion

Habeas corpus relief will be denied, and this case dismissed by separate Order. When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating "that reasonable jurists would find

15

the district court's assessment of the constitutional claims debatable or wrong" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-el v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983). Petitioner does not satisfy this standard, and the court declines to issue a certificate of appealability.


Date: May 16, 2013                              /s/
                                        Alexander Williams Jr.
                                        United States District Judge